UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHLEY GERTZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 19-12036-FDS |
| VANTEL INTERNATIONAL/PEARLS ) | |
| IN THE OYSTER INC. d/b/a VANTEL ) | |
| PEARLS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, C.J.**

This is an action arising out of a contract termination. In 2016, plaintiff Ashley Gertz began selling products as a distributor for defendant Vantel International/Pearls in the Oyster Inc., d/b/a Vantel Pearls. In late 2019, Vantel terminated its relationship with plaintiff.

The present dispute arises out of that termination. The parties executed a contract in 2017 called a "Leader Agreement." That contract includes a non-solicitation provision. In Count 2 of the amended complaint, plaintiff seeks a declaratory judgment that the provision is unenforceable. Defendant has now moved to dismiss Count 2 pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that it is moot.

For the reasons set forth below, the motion to dismiss will be granted.

**I.   Background**

    **A.   Factual Background**

The following facts are presented as alleged in the amended complaint unless otherwise

noted.[1]

Ashley Gertz is a resident of Maryland. (Amended Compl. ¶ 1).[2] Vantel International/Pearls in the Oyster Inc., doing business as Vantel Pearls, is a Massachusetts corporation with a principal place of business in Massachusetts. (*Id.* ¶ 3).[3] Vantel is a "multi-level marketing company" that manufactures and distributes jewelry. (*Id.* ¶ 9).

Vantel sells its products through a network of independent distributors, which it calls "Consultants." (*Id.* ¶ 10). Plaintiff became a consultant with Vantel on April 18, 2016. (*Id.* ¶ 26). In November 2017, Vantel presented plaintiff with a new contract, which it called the "Leader Agreement." (*Id.* ¶¶ 31-32; *see also* Dkt. No. 17-3). Plaintiff signed the Leader Agreement. (Amended Compl. ¶ 37).

Section 8 of the Leader Agreement contains a non-competition clause. (Dkt. No. 17-3 § 8). That clause includes a non-solicitation provision:

> **8. NON-COMPETITION.** . . . [W]hile you are a Leader and for a period of one (1) year following the termination of Leader's agreement with the Company for any reason ("Non-Competition Term"), Leader agrees that Leader will not, directly or indirectly, for him/herself or any other person or business entity within the Limitation Area (defined below):
>
> . . .
>
> (ii) Solicit or accept business from, or contact in any way any of Company's independent contractor consultants, customers or prospects

---

[1] The facts are set forth in greater detail in the Court's previous Order and Memorandum on defendants' motion to dismiss for failure to state a claim. (*See* Dkt. No. 32). The facts here are those relevant to Vantel's pending motion to dismiss for lack of subject-matter jurisdiction.

[2] Alicia Skarbek was joined as a plaintiff on the amended complaint. On September 9, 2020, Skarbek voluntarily dismissed her claims with prejudice pursuant to Fed. R. Civ. P. 41(a). (*See* Dkt. No. 45).

[3] Joan Hartel and unnamed Does were joined as defendants on the amended complaint. As described below, on July 14, 2020, the Court dismissed Counts 1, 4, 5, 6, and 7, but did not dismiss Counts 2 and 3. (*See* Dkt. No. 32). Plaintiff asserts the remaining counts only against Vantel. As a result, Vantel is now the sole defendant in this action.

. . . .

(*Id.*).[4]

On June 23, 2019, Vantel held an event for consultants called "Pearl Fest." (Amended Compl. ¶ 38). Plaintiff alleges that there was no requirement that a consultant attend Pearl Fest. (*Id.* ¶ 40).[5] For unspecified reasons, plaintiff was unable to attend the event. (*Id.* ¶ 41). Upon learning of plaintiff's non-attendance, Vantel warned plaintiff that failure to attend could "jeopardize [her] 'future' with the company." (*Id.* ¶ 42).

Less than a week after Pearl Fest, on June 28, 2019, plaintiff received a letter from Vantel stating that her position had been terminated pursuant to section 14 of the Leader Agreement. (*Id.* ¶ 43). Plaintiff alleges that she was terminated in response to her failure to attend Pearl Fest and in order for Vantel to avoid paying residual commissions she was due. (*Id.* ¶¶ 45-46).

One month later, on July 23, 2019, Vantel sent plaintiff a second letter stating that she was terminated for violating the non-solicitation provision within the company's Policies and Procedures. (*Id.* ¶ 48). Plaintiff alleges that this justification is pretextual. (*Id.*).

### B.  **Procedural Background**

On November 19, 2019, plaintiff filed an amended complaint that asserted seven claims. Defendants moved to dismiss all seven claims for failure to state claims upon which relief can be granted. On July 14, 2020, the Court dismissed the majority of plaintiff's claims. Plaintiff's surviving claims are for a declaratory judgment that the non-solicitation provision of the Leader Agreement is unenforceable (Count 2) and for breach of the implied covenant of good faith and

---

[4] There is also a stand-alone "Non-Solicitation" clause. (*See* Dkt. No. 17-3 § 9). But as discussed in the Court's previous Order and Memorandum, Count 2 does not refer to that section; it refers to the non-solicitation provision in section 8. (*See* Dkt. No. 32, at 11 n.8).

[5] The complaint does not clarify whether attendance was not required because Vantel did not intend to require it, or whether Vantel tried to require it but could not do so because consultants are independent contractors.

...
...
...

fair dealing (Count 3).  Vantel has moved to dismiss Count 2 pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that it is moot.

## II.    Legal Standard

Article III of the Constitution limits federal subject-matter jurisdiction to actual cases and controversies.  *See* U.S. Const. art. III, § 2.  The doctrine of mootness ensures that the limitation exists throughout a case.  *See American Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) ("The doctrine of mootness enforces the mandate that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed." (internal quotation marks and citation omitted)).  "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Id.* (internal quotation marks and citation omitted).  As a result, when a case is moot, a federal court does not have jurisdiction to hear that case.  *See id.*

The party invoking the doctrine bears the burden of establishing mootness.  *See id.*  For a claim for declaratory relief to survive a mootness challenge, the facts alleged must "show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) (quoting *American Civil Liberties Union of Mass.*, 705 F.3d at 54).  A court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor."  *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

Challenges to contracts "ordinarily" become moot upon that contract's expiration. *American Civil Liberties Union of Mass.*, 705 F.3d at 53 (collecting cases).  "Once a contract has expired, and the obligations between its signatories have ended, and if no damages are sought, the parties usually do not have a legally cognizable interest in the case's outcome."  *Id.*  As a

result, a declaratory judgment on the enforceability of an expired contract would be "merely advisory." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 142 (1st Cir. 2015) (quoting *American Civil Liberties Union of Mass.*, 705 F.3d at 53). Unless an expired contract "has impacted" and "will continue to impact" the parties, a claim seeking a declaratory judgment that the contract is unenforceable is moot. *Eaton v. Veterans Inc.*, 435 F. Supp. 3d 277, 281 (D. Mass. 2020).

### III.   Analysis

Under the terms of the Leader Agreement, plaintiff was prohibited from soliciting or accepting business from Vantel's consultants and customers "while [she was] a Leader and for a period of one (1) year following the termination of [her] agreement with [Vantel] for any reason." (Dkt. No. 17-3 § 8). Plaintiff alleges she was terminated on June 28, 2019. (Amended Compl. ¶ 43). Accordingly, the non-solicitation period ended June 28, 2020. Because the non-solicitation provision no longer imposes any obligations on plaintiff, she does not have a legally cognizable interest in a judgment declaring that provision unenforceable. *See American Civil Liberties Union of Mass.*, 705 F.3d at 53. Any declaration to that effect would be "merely advisory." *Town of Barnstable*, 786 F.3d at 142 (quoting *American Civil Liberties Union of Mass.*, 705 F.3d at 53). Her claim seeking a declaratory judgment that the non-solicitation provision is unenforceable is therefore moot. *See id.*

By contrast, in *Eaton v. Veterans Inc.*, 435 F. Supp. 3d 277 (D. Mass. 2020), the court concluded that an employee's claim seeking a declaratory judgment invalidating a non-competition agreement was "still live," even though that agreement had expired. *Id.* at 281. The plaintiff alleged that after she left her employer for another job, her former employer called her new employer and threatened to take legal action to enforce the non-competition agreement if the

plaintiff's new employer did not terminate her. *Id.*  After that call, the new employer terminated the plaintiff. *Id.*  The plaintiff further alleged that her former employer "left a continuing cloud over [her] professional reputation" and therefore she had "yet to obtain employment in her chosen field." *Id.*  Under the circumstances, the court concluded that the non-competition agreement had "impacted" and would "continue to impact the parties," even though it had expired. *Id.*

The complaint here makes no similar allegations.  It alleges neither that the non-solicitation provision has impacted, nor that it continues to impact, plaintiff's ability to solicit consultants or customers.  Instead, it alleges that the non-solicitation provision served as a pretextual basis for her termination.  (*See* Amended Compl. ¶ 48).  In other words, according to plaintiff's own allegations, the non-solicitation provision did not actually impact her employment—Vantel fired her for other reasons.  (*Id.* ¶¶ 41-48).  Furthermore, the complaint makes no allegations about any continuing impact of the non-solicitation provision since her termination.  Accordingly, any controversy between plaintiff and Vantel concerning the expired non-solicitation provision is no longer "live."  *See Eaton*, 435 F. Supp. at 281.

Plaintiff nonetheless contends that a live controversy regarding the non-solicitation provision still exists because that provision is relevant to Count 3—her claim for breach of the implied covenant of good faith and fair dealing.  (Pl. Opp. at 3).  More specifically, plaintiff reasons that Count 3 relies on an allegation that Vantel breached that covenant by "[t]erminating [plaintiff's] distributorship position[] by using false, pre-textual reasons for the termination, such as the false allegation that [plaintiff] violated Vantel's non-solicitation provision."  (*Id.* (emphasis omitted) (quoting Amended Compl. ¶ 72)).  Plaintiff says she expects that Vantel will argue that it never acted in bad faith because it rightfully terminated her for violating the non-

solicitation provision. (*Id.*). As a result, plaintiff contends that "there is an actual controversy whether [she] violated the non-solicitation provision and whether it even can be enforced." (*Id.*).

But that allegation is, in fact, no longer relevant to Count 3. In its Memorandum and Order on defendants' first motion to dismiss, the Court concluded that the Leader Agreement's termination clause, which provided Vantel the authority to terminate the agreement without cause, was valid. (*See* Dkt. No. 32, at 7-11). Accordingly, as the Court explained, plaintiff's allegation that Vantel breached the implied covenant of good faith and fair dealing because it terminated her for pretextual reasons is not sufficient to state a claim. (*See id.* at 15 n.10). It cannot have beached the covenant by terminating plaintiff on a pretextual basis, because it had no duty to provide any reason for terminating plaintiff. *See Cort v. Bristol-Myers Co.*, 385 Mass. 300, 305 (1982) ("We decline to impose liability on an employer simply because it gave a false reason or a pretext for the discharge of an employee at will. Such an employer has no duty to give any reason at the time of discharging an employee at will.").

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing survived defendants' first motion to dismiss, but the only allegation sufficient to support that claim is that Vantel terminated plaintiff's distributorship position to avoid paying residual commissions. (*See* Dkt. No. 32, at 15-17 & n.10). Even if the non-solicitation provision were unenforceable and Vantel terminated plaintiff using that provision as a pretextual justification, that would still be insufficient to state a claim for a breach of the covenant. As a result, plaintiff's allegation that Vantel violated the covenant by terminating her on a pretextual basis is no longer relevant to Count 3.

Plaintiff's attempts to distinguish two cases on which defendant relies are unavailing. (Pl. Opp. at 3-4). First, she contends that in *Meunier v. Market Strategies, Inc.*, 2017 WL

3251540 (Mass. Sup. Ct. June 13, 2017), the plaintiffs sought a declaratory judgment to void a non-solicitation provision. (Pl. Opp. at 4). By contrast, plaintiff argues, she seeks a declaratory judgment not to void the provision, but instead "to show that Vantel acted in bad faith when terminating [her]." (*Id.* at 4). Yet that simply repackages her argument that Vantel violated the implied covenant of good faith and fair dealing by terminating her on a pretextual basis.

Plaintiff also contends that *American Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops*, 705 F.3d 44 (1st Cir. 2013), is inapplicable, based on what she says are two factual differences. (Pl. Opp. at 4). Both, however, are immaterial. First, plaintiff points out that the decision did not concern a non-solicitation provision. (*Id.*). Nevertheless, the decision represents controlling authority on the issue of the mootness of claims for declaratory judgments concerning expired contracts or contractual provisions. Second, she notes that the plaintiff in that case did not seek damages, as she seeks here. (*Id.*). But she does not in fact seek any damages in Count 2. (*See* Amended Compl. ¶ 68 ("Plaintiff[] seeks an order from this Court that the non-solicitation provision is not enforceable as against [this Plaintiff].")). And the damages she seeks in Count 3—the only other remaining claim—do not depend on the enforceability of the non-solicitation provision, for the reasons discussed above.

In short, Count 2 is now moot and will therefore be dismissed.[6]

---

[6] Plaintiff also contends that Vantel's motion to dismiss for lack of subject-matter jurisdiction is premature because she filed a motion for reconsideration of the Court's decision on defendants' first motion to dismiss. (Pl. Opp. at 1-2). Plaintiff's motion for reconsideration was pending at the time she filed her opposition, but the Court has since denied that motion. (*See* Dkt. No. 41). In any event, the present motion is timely.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss Count 2 is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: October 27, 2020                Chief Judge, United States District Court